[No. 2,708.]

## JOSEPH S. PAGE *v.* LOUIS VILHAC.

42   75
f128 404

WHEN DEED WITH AGREEMENT TO SELL BACK NOT A MORTGAGE.—Where Page conveyed land to Vilhac on December 12th, 1864, by deed absolute on its face, in consideration of Vilhac's satisfying a mortgage for two thousand five hundred and twenty-two dollars, which he held against Page upon the property, and paying off a previous mortgage for five thousand two hundred and fifty-five dollars, held by a third party on the same property, and at the same time Vilhac gave Page a contract, agreeing to sell back the whole or any part of the property, on payment of eight thousand three hundred and seventy-seven dollars or a proportional part thereof, on or before November 1st, 1865, at which time the agreement was to "cease to be in force and become entirely null and void," and it appeared that the eight thousand three hundred and seventy-seven dollars to be paid represented moneys actually paid and to be paid by Vilhac, on the prop-

erty, and no part of it to be made up of interest to accrue during the interim, and that the attorney who drew the papers was directed by the parties to draw a full deed and not a mortgage, but to give Page a privilege of buying back the whole or any part, if he was able to do so by November 1st, 1865, and that both parties so understood the arrangement: *held,* that the transaction was one of sale and not of mortgage, and that after November 1st, 1865, without anything having been done, Page had no right or equity in the property.

Appeal from the District Court of the Fifth Judicial District, San Joaquin County.

The land conveyed by the plaintiff to the defendant consisted of three tracts in San Joaquin County, embracing in all about four hundred and ninety acres. The complaint alleged that the conveyance was intended by way of mortgage to secure the indebtedness of plaintiff to defendant, with interest, and prayed for an accounting between the parties and a redemption of the property, in favor of the plaintiff, upon his payment of what on such accounting might be found due to defendant.

The complaint was filed January 12th, 1869. April 16th, 1870, the findings copied in the opinion were filed, and afterwards judgment was entered to the effect that plaintiff was not entitled to redeem; that the defendant was the owner of the property in fee simple absolute, and dismissing the complaint. The plaintiff moved for a new trial, which was denied, and he then appealed from the judgment and order.

*Pringle & Pringle,* for Appellant.

Whether the contract between the parties was a mortgage or a conditional sale is a mixed question of law and fact. In doubtful cases, the leaning of the Courts is in favor of holding a transaction a mortgage. The deed and contract here were a mere device to avoid the process of foreclosure. In such cases the maxim of the Courts is, that the debtor shall not be allowed to deprive himself of his equity of redemption by any device to which his creditor may

obtain his consent. (Story's Equity, Sec. 1019; *Henry* v. *Davis,* 7 John. Ch. R. 41.)

The relation of debtor and creditor continued to exist after the conveyance of the land. The words of the agreement, that " on and after the first day of November next this agreement shall cease to be in force, and shall then be entirely null and void," are the ordinary words to carry out the form of swift security, which the creditor endeavored to adopt. They are not stronger than in the old form of a mortgage, and in this transaction mean nothing more.

The relation of debtor and creditor, the simultaneous execution of the deed and of the covenant for reconveyance, the continuance of the indebtedness—these circumstances control all other features, and compel the recognition of the mortgage. (*Enos* v. *Sutherland,* 11 Mich. 538; *Hickox* v. *Low,* 10 Cal. 197; *Brown* v. *Dean,* 3 Wend. 208; *Brown* v. *Dewey,* 1 Sandf. Ch. 56; *Barton* v. *May,* 3 Sandf. Ch. 450; *Reitenbaugh* v. *Ludwick,* 31 Penn. H. R. 131; *Wilson* v. *Thoenberger,* 31 Penn. H. R. 295; *Daubenspeck* v. *Platt,* 22 Cal. 334; *Wing* v. *Cooper,* 37 Vt. 169; *Tibbs* v. *Morris,* 44 Barb. ⌐38; *Graham* v. *Stevens,* 34 Vt., 5 Shaw, 166; *Roberts* v. *McMahan,* 4 Greene, Iowa, 34.)

*W. L. Dudley* and *J. H. Budd,* also for Appellant.

The transaction between Page and Vilhac, including the conveyance and written agreement to reconvey, constituted a mortgage, and remains a mortgage, and the mortgaged premises are subject to redemption.

In *Friedly* v. *Hamilton,* 17 S. & R. 70, it was held that an absolute deed and defeasance made at the same time, constituted a mortgage. (See, also, 1 Hilliard on Mortgage, 39; *Brown* v. *Nickle,* 6 Barr, 390; *Rogan* v. *Walker,* 1 Wis. 545; *Newcomb* v. *Bonham,* 1 Vern. 7; *Erskine* v. *Townsend,* 2 Mass. 493; *Carey* v. *Rawson,* 8 Mass. 159; *Eaton* v. *Whitney,* 3 Pick. 484; *Manlove* v. *Ball,* 2 Vern. 84.)

*George & Loughborough*, for Respondent.

Though Courts of equity permit parol evidence to prove that a conveyance, absolute upon its face, was intended as security, and in doubtful cases they will lean in favor of the right of redemption, and permit slight circumstances to determine the transaction to be one of mortgage, still they inquire into all the facts and circumstances to ascertain the intention of the parties, and will not do violence to their understanding. (See *Hickox* v. *Low*, 10 Cal. 197; *People* v. *Irwin*, 14 Cal. 428, and 18 Cal. 117; *Green* v. *Butler*, 26 Cal. 595; *West* v. *Hendricks*, 28 Ala. 226; Leading Cases in Eq. 624, notes.)

*James C. Carey*, also for Respondent.

The agreement shows, and the testimony was, that the relation of debtor and creditor ceased to exist on the delivery of the deed; it was taken in satisfaction of the debt, and not as security for a loan. A prior existing debt may be the consideration of a sale, and there is no presumption that the deed is given to secure its payment. (*Eckford's Ex.* v. *DeRay*, 26 Wend. 36; *West* v. *Hendricks*, 28 Ala. 234.)

The debts were extinguished by the deed. (26 Ala. 312; Leading Cases in Eq. 637; *People* v. *Irwin*, 14 Cal. 435; *Ford* v. *Irwin*, 18 Cal. 119; *Baker* v. *Thrasher*, 4 Denio, 495.) If not by the deed, then by the releases of record executed by Vilhac and Hazelton. A release is not only evidence of extinguishment, but it is the extinguisher itself. (*McCrea* v. *Purmot*, 16 Wend. 473.)

By the Court, WALLACE, J.:

On the 3d day of December, 1864, Page, by deed of that date, absolute in form, and reciting a consideration of seven thousand five hundred dollars, conveyed to Vilhac the prem-

ises in controversy. On the same day Vilhac executed and delivered to Page an instrument in the nature of a defeasance, referring to the conveyance so made, and agreeing, in terms, to sell to Page, at any time before the succeeding first day of November, which would be in the year 1865, the whole, or any portion less than the whole, of the premises embraced in the deed, at the price of eight thousand three hundred and seventy-seven dollars for the whole, should the whole be purchased, and if less than the whole, then at such price for such less portion as the parties might agree upon as the relative value thereof—concluding with the stipulation "that on or after the first day of November next the agreement shall cease to be in force, and shall then be entirely null and void." The premises having advanced greatly in value, in 1868, an action was brought in January, 1869, and the question made by the pleadings is, whether the transaction is to be considered as amounting to a mortgage, or to a sale with an agreement for a reconveyance, upon the conditions and within the period already named.

Upon the trial, each party was examined as a witness in his own behalf, and several other persons also testified, and the Court found the facts to be as follows:

"1. That on the 3d day of December, A. D. 1864, the plaintiff, Joseph S. Page, being the owner of the premises described and referred to in the plaintiff's complaint, and being indebted to W. P. Hazelton in the sum of five thousand two hundred and fifty-five dollars, gold coin, the same being the amount of principal and interest then due by said plaintiff to said Hazelton, upon a certain note secured by first mortgage upon said premises, and of certain moneys expended by said Hazelton in the payment of certain taxes on said premises, and of certain costs, including attorney's fees, that had accrued in a certain action then pending for the foreclosure of said mortgage, and the said Page being at

the same time indebted to the said defendant, Louis Vilhac, in the sum of two thousand five hundred and twenty-two dollars, gold coin, the same being the amount of principal and interest then due by said Page to said Vilhac, upon a certain note secured by second mortgage upon said premises, did make and enter into a verbal agreement with Vilhac to sell and convey to him the said premises in fee simple, and free of all incumbrances, in consideration that he, the said Vilhac, would pay to the said Hazelton the said sum of five thousand two hundred and fifty-five dollars, gold coin, and would release to said Page the said debt of two thousand five hundred and twenty-two dollars, gold coin, and would cancel the note and mortgage last aforesaid, which said two sums amounted to seven thousand seven hundred and seventy-seven dollars; and in further consideration that the said Vilhac would, by written agreement, give to said Page the privilege to purchase the said premises at any time before the first day of November, A. D. 1865, for the sum of eight thousand three hundred and seventy-seven dollars, gold coin, or to purchase any part of said premises at any time before the day last aforesaid, for a proportionate price to be agreed upon between the said parties.

" 2. That in pursuance of said verbal agreement the said Vilhac did, on the 12th day of December, 1864, pay to the said Hazelton the said sum of five thousand two hundred and twenty-five dollars, gold coin, who did thereupon surrender to said Page the note first aforesaid, and did cancel the said note and release and discharge the mortgage first aforesaid, and did dismiss the said foreclosure suit, and did accept the said sum in full payment and satisfaction of the said indebtedness; and at the same time and in further pursuance of the said verbal agreement the said Vilhac did release to said Page the said debt of two thousand five hundred and twenty-two dollars, gold coin, and did surrender to said Page the note second aforesaid, and did cancel the same,

and did release and discharge the said mortgage, whereby the said note was secured as aforesaid, and that in pursuance of said verbal agreement the said Page did, thereupon, on the said 12th day of December, A. D. 1864, deliver to the said Vilhac a deed, signed and sealed by him, the said Page, wherein and whereby he did sell and convey to said Vilhac, in fee simple, the premises aforesaid, free of all liens and incumbrances, which said deed bears date the 3d day of December, A. D. 1864, and is the same deed of conveyance mentioned and referred to in the pleadings filed in this action; and that the said Vilhac did, thereupon, and in pursuance of said verbal agreement, deliver to said Page, on the said 12th day of December, 1864, a written contract, duly signed by him, the said Vilhac, and sealed by him, wherein and whereby he did give to said Page the privilege to purchase the said premises, at any time before the 1st day of November, A. D. 1865, for the sum of eight thousand three hundred and seventy-seven dollars, gold coin, or to purchase any part thereof at any time before the said day, for a proportionate price, to be agreed upon between the said parties, which said agreement bears date the 3d day of December, A. D. 1864, and is the same that is referred to in said complaint, and is made part of the defendant's answer.

" 3. That it was not agreed between said Page and said Vilhac, nor understood or intended by either of them, that the said money, or any part thereof, that was paid, as aforesaid, to said Hazelton, should be advanced by said Vilhac as a loan to said Page, or that the same should be repaid by said Page to said Vilhac, but on the contrary thereof, it was understood and agreed between them, and intended by each of them, that the same should be paid as a part of the price to be paid by said Vilhac for the purchase of said premises.

" 4. That the said deed of conveyance was made and deliv-

ered by said Page to said Vilhac in payment of the said debt, which was due as aforesaid, by said Page to said Vilhac, and the same was accepted by said Vilhac in full payment and satisfaction of the said debt.

" 5. That immediately upon the delivery of said deed of conveyance the relation of debtor and creditor ceased to exist between the said Page and the said Vilhac.

" 6. That it was understood, agreed, and intended by each of the said parties, that the said deed should operate as a sale and conveyance of said premises to the said Vilhac.

" 7. That it was not understood or intended by said Page or by the said Vilhac that the said Vilhac should hold the said premises, under the said deed or otherwise, as security for any purpose whatever, or that the said deed or conveyance and the said contract for a reconveyance, should operate as a mortgage.

" 8. That the sum of seven thousand five hundred dollars was not the real consideration for said conveyance, as recited in said deed, but that the real consideration thereof was the sum of seven thousand seven hundred and seventy-seven dollars, which was paid by said Vilhac to said Page in the manner hereinbefore set forth, that is to say: by releasing and discharging the said debt, which was due to him as aforesaid, and paying to said Hazelton as aforesaid the amount that was due to him as aforesaid by said Page.

" 9. That the said Page was not indebted to the said Vilhac as set forth in said complaint, or otherwise than is hereinbefore set forth, and that all debts from said Page to said Vilhac were paid and extinguished by and upon the delivery of the said deed.

" 10. That the time limited in said contract for the purchase of said premises by said Page was understood, agreed, and intended by and between the said parties as of the essence thereof.

" 11. That the said Page never paid, or offered to pay, to

said Vilhac any money whatever for the purchase of said premises, or any part thereof, and that he never in any manner offered to buy the said premises, or any part thereof, from the said Vilhac, under the said written agreement or otherwise."

Subsequently, upon exception being taken for the want of a finding as to the value of the lands when the deed and agreement were made, the Court added a finding to the effect that the value of said land was then eight thousand dollars, or thereabouts, and that the consideration paid by the defendant to the plaintiff, as stated in the findings, was not inadequate to the value of said land. Judgment for the defendant having been thereupon rendered, a motion for a new trial was made and subsequently denied, and this appeal is taken from the judgment and the order denying the motion.

The facts as found, bring the case clearly within the general principles recognized here in the case of *Farmer* v. *Gross*, decided at the July Term, 1870. In that case the principal question was, whether or not the conveyance made by Barry and wife to Farmer, and the contemporaneous agreement in writing by which Farmer undertook to reconvey to Barry upon the receipt of certain sums of money to be paid by Barry within the period of time in the agreement limited, amounted to a mortgage, or to a sale, with a covenant to reconvey upon conditions. In that case, as here, the grantor was in necessitous circumstances; the premises were doubly mortgaged, the grantor was unable to remove these mortgages, and the mortgagees, or one of them, threatened a foreclosure. Under the agreement in that case, made contemporaneously with the conveyance, the grantor was to have the possession of the premises in the meantime, and a right to remove the crop thereon, and the sum which he was to pay upon reconveyance was the exact amount expressed

as the consideration in the deed, with interest at an agreed rate, with addition of such taxes as the grantee might in the meantime pay or become liable to pay on account of the premises, and also such sum or sums as might be expended by him in the prosecution of any action or actions to recover the possession of the premises. The significance of these circumstances, considered of themselves as tending to raise the presumption of a loan and a mortgage to secure its payment, was remarked in that case, but the presumption was held to be overcome by the other facts there appearing. These were, that the conveyance was absolute upon its face; that the agreement itself recited the fact that the grantee had *bought* the premises from the grantor and had *paid* him the purchase price; that Barry was not to be entitled to a reconveyance, unless he should comply with the conditions prescribed in the agreement on or before the first day of October following—after which time neither party was to be "held or bound by the terms of the same."

In the case now under consideration the conveyance is absolute on its face—the agreement is "to sell"—to sell the whole or *any portion less* than the whole premises; that at the expiration of the period of time therein limited "this agreement shall cease to be in force, and shall then be entirely null and void." No portion of the sum to be paid by Page upon reconveyance was made up of interest to accrue during the intervening period—the consideration named in the deed was seven thousand five hundred dollars—the sum to be paid upon reconveyance was eight thousand three hundred and seventy-seven dollars; the evidence shows that this sum was made up of a debt due from Page to Hazelton, and paid by Vilhac, with interest, taxes on the premises, advanced by Hazelton as mortgagee, and secured to him by the terms of the mortgage, attorney's fees, and costs incurred in the pending foreclosure suit which Hazelton had instituted, and in which Vilhac, as the holder of a former mortgage was

made a party defendant, also of a debt from Page to Vilhac, amounting, principal and interest, to some two thousand five hundred dollars, with interest at the rate of two and one quarter per cent per month, secured by note and mortgage on the premises, which note and mortgage Vilhac surrendered to Page at the time, and released the mortgage of record; to these amounts was added the sum of six hundred dollars, representing the rent of the premises for the current year, which rent Page had already received from Hodges, the tenant in possession.

The agreement for the reconveyance was prepared by an attorney to whom the parties jointly applied for that purpose, and with whom they talked it over. In relating what was said by both parties in his presence together, he says: "The understanding was that Vilhac should receive a full deed of the property; he had a mortgage already, and would not take another mortgage, but would give Page the privilege of buying the property back—give him the refusal of it for one year, or eleven months; that if he could turn himself and get it back, or buy any part of it at a proportionate value, he was to do it." * * * "Vilhac had stated distinctly he would not have another mortgage, and must have it so provided that it would not be a mortgage." * * * "The conditions were settled clearly by Vilhac, if I recollect, as I have stated before, and Page said that that was his understanding; that that was his agreement, words to that effect—an assent that was clear and unequivocal."

The record abounds with evidence of the most persuasive character, such as the conduct of the plaintiff at the time, and for long afterwards, his repeated statements made to others, etc., establishing with unusual clearness that he himself distinctly understood the transaction to amount to an agreement for a resale at his option, and nothing more, as

Vilhac emphatically and persistently insisted that it should be.

Judgment affirmed.

Mr. Justice TEMPLE did not participate in the foregoing decision.