[Civ. No. 3245. Second Appellate District, Division Two.—March 21, 1921.]

## JAMES G. CORTELYOU et al., Appellants, v. H. OSCAR VOGEL et al., Respondents.

[1] MORTGAGES—SUBSTITUTION OF DEED OF TRUST—DEFEAT OF EQUITY OF REDEMPTION.—Where parties to a mortgage, by an agreement subsequent to and entirely independent of the original transaction, moved by new consideration, substitute a deed of trust for the mortgage, such a new contract is legal and binding upon the parties to the deed of trust as a recognized form of security; and when it contains' a power of sale, it gives the grantee thereunder a right to collect his debt, either by foreclosure or by sale under the power contained, and until he has exercised his option to use the power of sale as a means of securing repayment of the debt, the equity of redemption which the mortgagor possesses is not defeated.

[2] ID.—FAIRNESS OF CONSIDERATION—IMMATERIALITY OF.—Where such deed of trust is not executed under such circumstances as to show it not to have been freely and voluntarily made, the element of fairness in the consideration is unimportant.

[3] ID.—CONSIDERATION—EVIDENCE — FINDINGS. — Where the evidence would amply support a finding that the trustor under such deed of trust received a valuable consideration therefor, the failure of the court to so find is not reversible error.

[4] ID.—FAILURE OF WIFE TO ASSENT TO SALE—VALIDITY OF.—The sale under the deed of trust having been completed prior to the time section 172 of the Civil Code, as amended in 1917, became effective, such sale was not invalid because not assented to by the wife of the trustor.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. M. Meyers and Leslie E. Clawson for Appellants.

Oscar Lawler and James E. Degnan for Respondents.

CRAIG, J.—The contract, whose construction forms the basis of this litigation, consists of a grant deed, trust in-

structions, and a declaration of trust. There can be no question but that the parties intended these instruments to be read together as a single contract.

"We, the undersigned, do hereby certify and declare that the foregoing Declaration of Trust No. 3758 correctly and accurately sets forth and declares the trusts under and upon which said real property is held by the said Trustee and do also, hereby agree to and do approve, ratify and confirm the same in all particulars.

"To be signed by:

"James G. Cortelyou

"(Signed)   JAS. G. CORTELYOU

"Payor

"Address 5970 Hayes Ave.

"H. Oscar Vogel.

"(Signed)   H. OSCAR VOGEL

"Payee

"Address Sierra Madre."

It will not be necessary to set forth the declaration of trust in full, but it is sufficient to say that it contains recitals of an indebtedness "from the payor" Cortelyou, to the "payee," Vogel, and of a trusteeship upon the part of the Title Insurance and Trust Company and the provisions of trust; the manner in which it should be executed; a power of sale under certain conditions and directions for the distribution of the proceeds of sale and other provisions usually found in trust agreements. Regarding the instruments mentioned as one, they constitute a deed of trust to secure the payment by Cortelyou of $10,450 with interest thereon at the rate of eight per cent per annum, and further advances to Vogel on or before the twenty-fourth day of April, 1917. If this instrument had been executed as an original contract no question would be made as to its validity, for deeds of trust have been upheld in California decisions. (*Sacramento Bank* v. *Alcorn,* 121 Cal. 379, [53 Pac. 813]; *Kinard* v. *Kaelin,* 22 Cal. App. 383, [134 Pac. 370].) But as we understand appellant, he contends that because the deed of trust was substituted for a note and mortgage the deed of trust is inoperative as such and that it will be considered in equity as a mortgage. Therefore, he claims that Vogel has an equity of redemption.

It is a fact that a note for $10,000 with interest thereon at eight per cent per annum, and mortgage to secure the same, had been executed dated July 3, 1915, and that on April 4, 1916, Cortelyou was six months in arrears in the payment of the interest; that the mortgage contained the usual provision that upon the default of any installment of interest the mortgagee might declare the whole sum of the principal and interest due and payable and proceed with foreclosure, and that Vogel had so declared and had notified Cortelyou that unless payment was made at once foreclosure proceedings would be instituted. The parties then agreed that instead of filing a suit in foreclosure this trust agreement should be executed; that Vogel would cancel the note and mortgage held by him; that the interest then due thereon should be added to the principal in the deed of trust, and that Vogel should be authorized to make further advances to protect the title of the property conveyed, which he did to the amount of over $6,000; that such advances should also be secured by the deed of trust, and that no equity of redemption should be allowed Cortelyou under the deed of trust after sale of the property under its power of sale, and that he might pay the indebtedness at any time up to and including April 24, 1917. This agreement was carried out and the note and mortgage were canceled by Vogel. Cortelyou and his wife executed a grant deed by which the legal title to the premises was conveyed to the trustee. Cortelyou made out and signed the trust instructions and the Trust Company executed its declaration of trust in conformity therewith and entered upon the performance of its trust. It may be especially noted that after April 24, 1917, Cortelyou signed his approval of this declaration in the language quoted above.

Assuming that the parties to this deed of trust were *compos mentis* and acting freely and voluntarily, no sufficient legal reason is presented, and we know of none, which would prevent them from thus contracting with one another. Section 2889 of the Civil Code has no application to such a case, for it only purports to apply to original transactions. This is clear from the language of the section itself and our supreme court in *Watson* v. *Edwards*, 105 Cal. 70, [38 Pac. 527], and *Garwood* v. *Wheaton*, 128 Cal. 399, [60 Pac. 961], so held. Appellant cites *Henlay*

v. *Hotaling*, 41 Cal. 22, and other authorities as holding that "the test of whether or not the transaction is a continuing mortgage is, is there a subsisting continuing debt from the grantor to the grantee." But in each of these cases the test thus applied was to determine whether or not the contract in question was a deed or a mortgage. None of them hold that such a test should be applied in determining the question here involved, to wit: whether or not the parties intended, and had the legal right, to substitute a deed of trust for a mortgage. [1] Where parties to a mortgage, by an agreement subsequent to and entirely independent of the original transaction, moved by new consideration, substituted a deed of trust for a mortgage, such a new contract is legal and binding upon the parties to the deed of trust as a recognized form of security; when it contains a power of sale it gives the grantee thereunder a right to collect his debt either by foreclosure or by sale under the power contained, and until he has exercised his option to use the power of sale as a means of securing repayment of the debt the equity of redemption which the mortgagor possesses is not defeated. (*Bell Silver & Copper Min. Co.* v. *First Nat. Bank of Butte,* 156 U. S. 470, [39 L. Ed. 497, 15 Sup. Ct. Rep. 440, see, also, Rose's U. S. Notes].)

As we view it, the appellant proceeds upon the erroneous premise that the grant deed executed April 24, 1916, is a contract in itself and, being absolute upon its face, may be set aside as an attempted disposition of the equity of redemption possessed by Cortelyou under the original mortgage agreement. The deed being only a part of the entire contract made up of the instruments heretofore mentioned and which, taken together, constitute a deed of trust, it is apparent that the authorities cited by appellant to support his various contentions, except those bearing upon the alleged threats and compulsion claimed to have been used by Vogel against Cortelyou, are irrelevant to the issues in this case.

We now proceed to a consideration of the objections to the findings IV and VI. They are as follows: Finding IV. "That it is not true that said litigation caused the plaintiff, James G. Cortelyou, so much worry and anxiety that he was partially or at all unfitted during the months

of March and April, 1916, to properly carry on his business; that it is not true that said defendant, H. Oscar Vogel knew that said plaintiffs were mentally distressed or financially embarrassed by reason of said litigation; that it is not true that said H. Oscar Vogel well, or at all, knew that the financial resources of plaintiffs were being drawn upon to meet and defray the necessary expenses of said litigation." Finding VI. "That it is not true that said grant deed mentioned in said complaint, and marked Exhibit 'C,' and made a part thereof, was executed by plaintiffs because of any threats or compulsion on the part of said defendants, or either of them, but, on the contrary, it is true that said deed was executed freely and voluntarily by said plaintiffs, as herein set forth, and not otherwise." It is claimed that the evidence does not support these findings. Assuming that the plaintiff was financially embarrassed by litigation in the state of Washington; that he was in some degree of ill health, although nothing in the evidence indicates that this was of a serious nature; that he was much worried, and that the defendant knew these facts and still insisted upon being paid the interest due him and declared that he would foreclose the mortgage if it was not paid, nevertheless these facts fall far short of proof that the deed of trust was not fairly and voluntarily executed by one entirely capable of contracting. Courts must respect the general principles of contract and the strong effort of the law to protect the right to contract from impairment. It may be that the findings complained of contain some redundant matters, but there is no prejudicial error in them. *Bradbury* v. *Davenport,* 114 Cal. 593, [55 Am. St. Rep. 92, 46 Pac. 1062], is cited as holding that "Whenever the relation of mortgagor and mortgagee is once shown to exist, the court views with distrust and disfavor any arrangements between them, by which it is proposed to transfer the equity of redemption to the mortgagee, and the parties will be held to their original relation, unless the transaction appears to be perfectly fair, and no advantage is taken by the mortgagee of the mortgagor by reason of his encumbrance." But this and numerous other authorities cited to the same effect deal with the exceptional case of equity's jealousy in preventing the imme-

diate transfer of an equity of redemption, a condition not involved in the case at bar.

[2] Another objection which appellant makes is that the evidence does not support the finding that "there was full value and consideration for the execution and delivery of the grant deed." Having determined that the instrument was a deed of trust and that it was not executed under such circumstances as to show it not to have been freely and voluntarily made, the element of fairness in the consideration is unimportant. (*Hall* v. *Crowley,* 12 Cal. App. 30, [106 Pac. 426].) [3] The most that could be required would be a finding that a valuable consideration was received by Cortelyou and the evidence would amply justify such a finding. Under such circumstances its absence is not reversible error. (*Murphy* v. *Bennett,* 68 Cal. 528, [9 Pac. 738]; *Krasky* v. *Wollpert,* 134 Cal. 338, [66 Pac. 309].)

[4] There is no merit in the contention that the sale under the deed of trust was not valid because it was not assented to by Ella B. Cortelyou, the wife of James G. Cortelyou. This transaction was completed June 21, 1917; at that time a husband had full power of disposition of the community property. (Sec. 172, Civ. Code.)

Certain rulings of the trial court excluding evidence are relied upon for a reversal. In the main these rulings are not erroneous and no error is found which could affect the substantial rights of the parties.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1921.

All the Justices concurred except Wilbur, J., who was absent.